**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------

Francesca Bullaro and Daniel Colasuonno, individually, and
on behalf of their son, L.C., a minor

                            Plaintiffs-Appellants,

    v.                                      **COMPLAINT**

Garden City Union Free School District,

                            Defendant-Appellee.

------------------------------------------------------------

F.B. and D.C. ("Parents"), individually on behalf of their son, L.C. (collectively, "Plaintiffs"), by their attorneys, the Law Offices of Susan J. Deedy & Associates, allege the following:

<u>**PRELIMINARY STATEMENT**</u>

1. Plaintiffs bring this action for administrative review under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Article 89 of the New York State Education Law seeking reversal of a decision dated December 6, 2023, by the New York State Review Officer ("SRO"),[1] which incorrectly reversed the Findings of Fact and Decision ("FOFD") dated September 8, 2023 by New York Impartial Hearing Officer ("IHO") Martin Kehoe, Esq.[2]

2. Plaintiffs seek review and reversal of the decision of the State Review Officer ("SRO").

<u>**JURISDICTION AND VENUE**</u>

3. This Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1331, in that the claims asserted arise under federal law.

---

[1] The SRO Decision is attached as Appendix A.
[2] IHO Kehoe's FOFD is attached as Appendix B.

4. This Court has supplemental jurisdiction over claims arising under New York state law pursuant to 28 U.S.C. § 1367.

5. The venue for this action lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391. The Eastern District of New York is the judicial district in which both the Defendant and Plaintiffs are situated and in which the claims arose.

6. Plaintiffs bring this action as an "aggrieved" party under 20 U.S.C. § 1415(i)(1) and (2).

7. Plaintiffs have exhausted their administrative remedies, having tried a Due Process hearing before a New York Impartial Hearing Officer ("IHO") and litigated an appeal before the New York State Education Department ("NYSED") Office of State Review ("OSR").

8. This action is timely filed within four months of the SRO's decision.

## PARTIES

9. Plaintiffs L.C. and his parents F.B. and D.C. are not expressly named herein due to the privacy protections guaranteed by the IDEA, and the Family Educational Rights Privacy Act ("FERPA") pursuant to 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

10. Plaintiffs reside in Garden City, New York, within the Garden City Union Free School District ("District").

11. L.C. is "child with a disability" as defined by the IDEA. 20 U.S.C. § 1400, et seq.

12. The District is the local education agency ("LEA") responsible for providing appropriate special education and related services to children classified under the IDEA as disabled who reside within its boundaries.

## FACTUAL ALLEGATIONS

13. L.C. is an 11-year-old boy diagnosed with Attention Deficit Hyperactivity Disorder, Combined Type, a Language Disorder (Auditory Processing Disorder – Phonological

Delays), Specific Learning Disorder with Impairment in Reading Mild (Dyseidetic Dysphonetic Dyslexia), Specific Learning Disorder with Impairment in Written Expression, Mild (fluency punctuation accuracy, organization of written expression). <u>See</u> Dist. Ex. D5.

14. Parents first noticed that L.C. was having some difficulty around 3 years of age when he could not grasp some of the letters and letter sounds. Tr. at 1861-1862.

15. Parents conveyed their concerns with the kindergarten teacher, Ms. Conlon, prior to starting kindergarten and again during the school year. Tr. at 1864-1866.

16. L.C. was found eligible for special education in kindergarten (2017-2018 school year) as a student with a speech or language impairment and received speech-language therapy to address his articulation difficulties. Dist. Ex. D1-4, D2-7, D22-4, 5; Tr. at 1864-1866, Pl. Ex. Q; SRO Dec. at 2.

17. In first grade, L.C.'s classroom teacher, Ms. Mauro, recognized that he was having trouble reading sight words and requested an Instructional Support Team ("IST") meeting in January 2019. Tr. at 1872-1873, 1875.

18. At the IST meeting, the team recommended some strategies to be implemented in the classroom. Tr. at 1873. The strategies were implemented but there was no significant change in L.C.'s performance. Tr. at 1874.

19. Parents grew concerned about L.C.'s progress and requested further evaluations.

20. In January and February 2019 (first grade) the District conducted a psychoeducational evaluation and educational evaluation. D2-3, 5; D19.

21. A Committee on Special Education ("CSE") meeting was held in May 2019 to discuss the psychoeducational evaluation.

22. At the meeting, Parents asked whether L.C. should repeat first grade due to his lack of reading progress. Tr. at 1877, 1880. However, the CSE stated that it was not concerned about any learning disability or delays, and stated that L.C. was very bright. Tr. at 1878, 1880.

23. Rather than increase L.C.'s services, the CSE removed speech service from his IEP and "declassified" him – *i.e.*, it would no longer consider him a child with a disability needing an IEP. Tr. at 1879; Dist. Ex. 3.

24. F.B. was falsely reassured that L.C. was doing well, had no issues, and that all the issues Parents raised about L.C.'s reading were not really issues. Tr. at 1880.

25. In the beginning of second grade, Parents communicated with L.C.'s teacher, Ms. Solano, about his difficulties. Tr. 1884, 1889. They informed Ms. Solano during the back-to-school meeting that L.C. was getting upset in the morning and would not want to go to school and would give them very hard time. Tr. at 1887. She said that L.C. seemed happy in class but that she did notice specific concerns in English Language Arts ("ELA") and would request an IST again for him. Tr. at 1889.

26. F.B. was becoming concerned about new behaviors from L.C. Tr. at 1891. He was becoming anxious about going to bed at night and going to school in the morning. T. 1891. Things grew much worse in January 2020, as he was crying almost every day about going to school. Tr. at 1892, 1897-1898.

27. Parents switched home tutors and started providing L.C. services through a reading specialist. Tr. at 1892. The reading specialist suggested that they obtain an auditory processing evaluation. Tr. at 1892, 1893.

28. Parents started looking into both a neuropsychological evaluation and auditory processing evaluation, but could not schedule either because of COVID shutdowns. Tr. at 1894-1895.

29. During virtual instruction, they realized that L.C. was still having significant academic difficulty. Tr. at 1895.

30. During second grade, Parents exchanged multiple emails with Ms. Solano and she confirmed that L.C. was having difficulties. Tr. at 1896-1900, 1903-1906, Dist. Ex. 28, 29, 30.

31. Ms. Solano testified clearly that L.C. was not making progress in second grade. The report card confirms that L.C. made inconsistent progress in almost all areas by the end of the school year. Tr. at 435-445.

32. Ms. Solano repeatedly emphasized throughout her direct and cross examination that L.C. was having all kinds of difficulties, such as engaging in off-task behaviors and being distracted. Tr. at 424-425, 430. His reading was deficient in both fluency and comprehension. Tr. at 425. He did not want to come to school. Tr. at 425. He was slower to start and did not have stamina. Tr. at 427. He was not an excited learner. Tr. at 427. He had difficulty listening and following directions. Tr. at 428. He did not complete assignments. Tr. at 433. He had attendance issues during the remote instruction. Tr. at 424. And he had math deficiencies. Tr. at 424-435.

33. L.C.'s struggles were significant enough that Ms. Solano called for an IST meeting for him. Tr. at 1889, 409, 431. She testified that IST meetings are called to discuss concerns relating to a student after Multi-Tiered Support System ("MTSS") Tier 1 and Tier 2 strategies – regular classroom interventions that increase in intensity to support struggling students – have been unsuccessful. Tr. at 387-388. Typically, students receive Tier 1 or Tier 2 interventions for 10 to 12 weeks before an IST meeting is called. Tr. at 391. Ms. Solano further testified that she requests an IST meeting when a student is not progressing to her satisfaction. Tr. at 408-409.

34. She was concerned about L.C.'s reading, math, and speech deficiencies. Tr. at 410. She further testified that an IST meeting occurred in January and then again at the end of February, beginning of March 2020. Tr. at 412.

35. The District had enough information to suspect that L.C. was a student with a disability. He had been previously classified with a disability during kindergarten and received speech and Academic Intervention Services ("AIS") for reading. Tr. at 1868-1869. L.C.'s difficulties with reading were well known by the District's staff members, as were the emotional difficulties caused by his academic struggles. Ms. Solano confirmed with Parent that L.C. was having difficulties. Tr. at 1899.

36. For the 3rd grade (2020-2021), Ms. Stevens (also known as Ms. Snyder) was L.C.'s classroom teacher. Tr. at 1907. It was a hybrid year and the classes were divided into small groups of about 15 students each. Tr. at 1907. Ms. Burke was the second teacher in the divided classroom. Tr. at 1907-1908. As Parents had done in the previous school years, Parents spoke with Ms. Stevens at the back-to-school night and brought up their concerns regarding L.C.'s academics. Tr. at 1910-1911. F.B. testified that even after she brought up her concerns, Ms. Stevens never recommended a special education referral. Tr. at 1912.

37. F.B. was concerned about L.C.'s progress and requested that the evaluation process begin. Tr. at 1918-1919.

38. While the District was conducting its evaluations, Parents obtained a private neuropsychological evaluation and an auditory processing evaluation. Tr. at 1923-1924, Dist. Ex. 35. Dr. Geffner evaluated L.C. at the end of December 2020 and diagnosed him with auditory processing delays. Tr. at 1930-1931, Dist. Ex. 27. In her evaluation, Dr. Geffner

recommended an FM system which was inconsistently provided by the District. Tr. at 1935-1936.

39. Around January 2021, Parents emailed Dr. Tornincaso, Mrs. Norton, the school principal, and Ms. Stevens regarding L.C.'s behavioral difficulties in the last few months. Tr. at 1940-1942, Dist. Ex. 42. L.C. was reluctant to go to school, would cry after getting home, had difficulty completing his homework, and had a very low self-esteem. Tr. at 1941. L.C. was becoming aware that he was having difficulty and his self-esteem declined. Tr. at 1941.

40. Around February 2021, F.B. wrote an email to Ms. Stevens and Dr. Tornincaso in which she stated that L.C. was increasingly frustrated because of difficulty with reading assignments. Tr. at 1943-1944, Dist. Ex. 46, Pl. Ex. P. He was reluctant to start doing any homework. Tr. at 1944. He was spelling words phonetically. Tr. at 1945. Math also started to become a problem because in the 3rd grade, it became more difficult and involved problem solving. Tr. at 1945.

41. F.B. testified that she let L.C. write independently and she became very concerned that L.C. was writing phonetically, and basic word structure was wrong. Tr. at 1946-1948, Pl. Ex. P. F.B. emailed Ms. Stevens who acknowledged that L.C. was having difficulty. Ms. Stevens acknowledged that L.C. needs a lot of scaffolding, he needs step-by-step approach, and he needs to be focused. T. 1948. F.B. testified that she was being informed by the teachers that he was doing fine with a lot of support but when he is doing something independently, there was a huge disconnect. T. 1949.

42. On February 25, 2021, F.B. sent an email to Ms. Stevens to say that L.C. was unable to write his thoughts independently and he was not understanding what he was reading. Tr. at 1951, Dist. Ex. 48. On March 9, 2021, F.B. wrote an email to Ms. Stevens that she was worried

about L.C., and he is making comments that he is feeling dumb and that he is going to fail. His confidence was getting worse and worse. Tr. at 1958, Pl. Ex. C.

43. At the March CSE meeting, Dr. Garcia Sevilla ("Dr. Sevilla") recommended that L.C. needed a specialized program targeted for students with dyslexia. Tr. at 1970. F.B. testified that she was not aware of all of the resources that can be provided by the District, and when the CSE brought up the resource room program, it made sense to her. Tr. at 1966. However, F.B. still asked for more support. Tr. at 1966-1967. F.B. testified that the resource room program is not appropriate for L.C., and he needed much more support. Tr. at 1967.

44. After the March CSE meeting, F.B. sent an email to Dr. Tornincaso to request certain changes to the IEP. Tr. at 1960, Dist. Ex. D. The delay in providing consent to the District was only because F.B. was requesting certain items from the District and the District was denying them. Tr. at 1968-1969, Pl. Ex. E.

45. On April 12, 2021, F.B. emailed Ms. Stevens to say that L.C. was starting to become very reluctant and anxious to go to school. Tr. at 1975, Dist. Ex. 52. L.C. was very clear that the school was becoming difficult for him. Tr. at 1975. On April 13, 2021, F.B. wrote an email to Ms. Stevens to say that L.C. was having emotional difficulties going to school, and he was having difficulty with his homework. Tr. at 1974, Dist. Ex. 52. F.B. testified that she asked for an update from the teachers regarding his progress in school after starting the services. However, the response from the teacher was very general that L.C. was adjusting well to the setting, and he is doing well. Tr. at 1977-1978.

46. In May 2021, F.B. requested another meeting to discuss L.C.'s continued struggles in school. Tr. at 1968. There was a Zoom call with Mrs. Norton, Ms. Stevens, Ms. Gonzalez and other teachers and providers. Tr. at 1979-1981. F.B. informed the team that she was a little

frustrated that she was not clear on how it all connected on a daily basis. Tr. at 1980. F.B. believed that all staff members in the school were working in silos, and it did not feel like a cohesive effort to help L.C. It did not feel like one person was talking to another and it was very confusing for F.B. Tr. at 1968. She made the team aware that L.C. was getting very upset despite being encouraged to do the best he could. Tr. at 1980.

47. F.B. testified that she started looking at Churchill School in late May to keep her options open because things were not improving and L.C. was not getting better. Tr. at 2003, Dist. Ex. 57. At the June 2021 CSE meeting, the District continued to recommend the resource room program with related services of group speech. Dist. Ex. 5. F.B. testified that the June CSE did not change the services and L.C. was recommended to remain in the same resource room program which was not what L.C. needed. Tr. at 2007. F.B. started considering Windward School in June. Tr. at 2007. Windward contacted the District to obtain L.C.'s information. Tr. at 2007-2008, Dist. Ex. 58.

48. In September, Parents called the District on the first day of school to inform them that L.C. was not attending the District's school. Tr. at 2009. In addition, F.B. informed Mrs. Norton that L.C. was not returning to the District. Tr. at 2009, 2023. On October 5, 2021, F.B. sent an email to the District to inform them that L.C. was attending the Windward School. Tr. at 2008, 2023. F.B. testified that she will continue to seek an IEP from the District. Tr. at 2008-2010, Dist. Ex. 61. F.B. testified that she changed schools for L.C. because the District was not providing the resources he needed and it was very clear at the last CSE meeting. Tr. at 2009. L.C. was admitted at Windward in July. Tr. at 2009.

### Parents File and Prevail in a Due Process Hearing before
### Impartial Hearing Officer Kehoe

49. On February 17, 2022, Parents filed a due process complaint against the District to seek

    reimbursement for the cost of tuition at Windward School. Pl. Ex. A.

50. A Due Process hearing was held before IHO Martin Kehoe ("IHO Kehoe") over 20 days

    between April 4, 2022, and April 27, 2023.

51. On September 8, 2023, IHO Kehoe issued a decision in Case Number 570156.

52. Based on these and other facts developed at the Due Process Hearing, IHO Kehoe concluded

    that the District failed to offer a FAPE to L.C. for the 2020-2021 and 2021-2022 school

    years.

53. IHO Kehoe ruled that the District violated its IDEA "child find" obligations during the 2020-

    2021 school year, which entitled L.C. to receive compensatory education services.

54. He ordered the District to fund or reimburse all tuition and costs associated with L.C.'s

    placement at Windward School for the 2021-2022 school year, including tuition and

    admissions costs.

55. On October 17, 2023, the District filed a Request for Review ("RFR") appealing IHO

    Kehoe's FOFD to the OSR.

56. The District's appeal sought to overturn IHO Kehoe's finding that the District denied L.C. a

    FAPE.

### SRO Issues an Erroneous Decision Reversing IHO Kehoe's Finding
### that the District Denied FAPE to L.C.

57. On December 6, 2023, State Review Officer Carol H. Hauge ("SRO Hauge") issued a

    decision in the District's appeal. See SRO Dec. No. 23-223.

58. In SRO 23-223, SRO Hauge erroneously ordered that IHO Kehoe's FOFD be modified by reversing those portions which found that the District violated its child find obligations, and denied the student a FAPE for the 2020-2021 and 2021-2022 school years. She also erroneously found that Parents are not entitled to reimbursement for the cost of L.C.'s tuition at Windward for the 2021-2022 school year.

59. SRO Hauge also erred by failing to issue a finding on the appropriateness of Windward School for L.C. during the 2021-2022 school year, and failing to issue a ruling on whether equitable considerations supported Parents' request for relief.

60. SRO Hauge erred by ruling that certain theories of liability were abandoned by Parents as a result of not raising them in a cross-appeal. Specifically, SRO Hauge erroneously ruled that the issues relating to the sufficiency of evaluative information, the Parents' participation, sufficiency of the present levels of performance, lack of a recommendation for behavioral strategies or plans, and appropriateness of annual goals were deemed abandoned.

61. SRO Hauge erred in ruling that the District did not violate its child find obligations during the 2020-2021 school year. She ignored evidence that showed that Parents were communicating with the teachers regarding L.C.'s struggles from the beginning of the school year and the teachers agreed that L.C. was having difficulties in school. In addition, SRO Hauge did not consider evidence that Parents had been communicating their concerns with the 2nd grade teacher during the 2019-2020 school year, but which the District ignored. Instead of making a referral for special education services, both the 2nd and 3rd grade teachers continued to provide ineffective AIS reading services to L.C.

62. SRO Hauge erred in ruling that delays in holding the CSE meeting after the CSE referral by Parents were, at most, brief and did not rise to the level of a denial of a FAPE.

63. SRO Hauge erred in ruling that the March 2021 CSE recommended an appropriate program for L.C. She erroneously held that L.C. was making progress prior to the March CSE in the general education classroom and would have continued to make progress in the same classroom with the addition of the resource room program and speech and language therapy. In making such a ruling, SRO Hauge ignored evidence in the record that demonstrated that L.C. was having academic, social/emotional and executive functioning difficulties in the general education classroom setting even when the 3rd grade teacher, prior to the March 2021 CSE, was implementing the same supplementary aids and modifications in the classroom. SRO Hauge ignored significant evidence that L.C. was having difficulties with attention and focusing in the general education classroom setting as a result of his inability to read and understand the material.

64. SRO Hauge erred in ruling the June 2021 IEP provided L.C. a FAPE. She erroneously held that continuation of the same resource room program was reasonably calculated to enable L.C. to make appropriate progress for the 2021-2022 school year. She failed to consider that L.C. was experiencing significant academic, social/emotional and executive functioning difficulties in the general education classroom setting. The minimal recommendation of a resource room program offered by the District did not address L.C. significant needs in various areas throughout the school day.

## CAUSE OF ACTION

### COUNT I
### Denial of FAPE
### Individuals with Disabilities Education Act and
### Article 89 of the New York State Education Law

65. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

66. As the LEA for L.C., Defendant was required under the IDEA to timely "find" L.C. as a child with a disability and then offer him a free appropriate public education.

67. Defendant did not timely find L.C. and then failed to develop and provide him a FAPE with an IEP reasonably calculated to enable L.C. to receive educational benefits for the 2020-2021 and 2021-2022 school years. 20 U.S.C. § 1400, et seq.

68. IHO Kehoe correctly held that the District violated the IDEA by failing to find L.C. and failing to provide him a FAPE.

69. SRO Hauge erred by reversing IHO Kehoe's FOFD.

70. SRO Hauge erred in finding that DOE offered L.C. a FAPE for the 2020-2021 school year.

71. SRO Hauge erred by failing to affirm IHO Kehoe's finding that Windward School was an appropriate unilateral placement for L.C. during the 2021-2022 school year.

72. SRO Hauge erred by failing to affirm IHO Kehoe's finding that equitable considerations favored an award of full public funding of all costs related to L.C.'s enrollment at Windward School for the 2021-2022 school year.

### RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter Judgment:

    i.      Vacating and reversing SRO Hauge's decision in its entirety, and reaffirm IHO

               Kehoe's FOFD in its entirety.

    ii.     Declaring that Defendant violated L.C.'s right to a FAPE under the IDEA and

               New York Education Law.

b. Award to Plaintiffs their costs and attorneys' fees as "prevailing parties"; and

c. Grant such other, further and different relief as this Court may deem just, proper, and

   equitable.

Dated: April 5, 2024
      Nassau County, New York

                             Respectfully Submitted,

                             Law Offices of Susan J. Deedy & Associates
                             *Attorneys for Plaintiffs*

             By:            _____
                             S. Fahad Qamer, Esq. (4291571)
                             1600 Stewart Avenue, Suite 609
                             Westbury, NY 11590
                             (516) 221-8133